E-FILED
Wednesday, 11 April, 2007  05:10:53 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DANA R. PERKINS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 06-3073 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

### <u>OPINION</u>

JEANNE E. SCOTT,  U.S. District Judge:

This matter comes before the Court on Petitioner Dana R. Perkins'
Notice of Out of Time Appeal (d/e 1), in which Petitioner incorporated a
motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §
2255; his Supplement to Petition for 28 U.S.C. § 2255 (d/e 7); and his
Amended Motion 28 U.S.C. § 2255 and Memorandum in Support  (d/e 20)
(Amended Motion) (the three pleadings are collectively referred to as
"Petition").  Perkins was charged on July 10, 2003, with Conspiracy to
Manufacture and Distribute Methamphetamine.  <u>United States v. Perkins</u>,
C.D. Ill. Case No. 03-30059, <u>Indictment (Case No. 03-30059, d/e 1)</u>.
Perkins signed a Cooperation Agreement with the Government on

September 3, 2004, which included a grant of use immunity for information provided by Perkins.  Plea Agreement and Stipulation of Facts (Case No. 03-30059, d/e 28) (Plea Agreement), attached Cooperation Agreement.  On May 4, 2004, Perkins pleaded guilty to Conspiracy to Manufacture and Deliver Methamphetamine, as set forth in Count 1 of the Indictment.  On March 8, 2005, he was sentenced to 210 months imprisonment.  Case No. 03-30059, Minute entry entered on March 8, 2005.

Perkins complains in the Petition that his rights were violated because: (1) the factors used to calculate his sentence were not charged in the Indictment and proven to a jury beyond a reasonable doubt; (2) the factors used to calculate his sentence were based on his immunized statements in violation of his Cooperation Agreement; and (3) his counsel was ineffective throughout the sentencing process.  For the reasons set forth below, Perkins' Petition is denied.  Perkins waived his right to bring a § 2255 petition as part of his Plea Agreement.  Plea Agreement, at 6-7.  Even if he did not waive his right to bring this action, he fails to demonstrate that a legal or factual basis exists to support any of his claims.

STATEMENT OF FACTS

On July 10, 2003, a grand jury handed down a two-count indictment

2

against Perkins and co-defendant Gregory S. Maynor.  Count 1 charged that, from approximately November 2002 until May 2003, Perkins and Maynor conspired to manufacture and distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Indictment, Count 1.  Count 1 of the Indictment did not allege a particular quantity of methamphetamine.   Count 2 charged Perkins with distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

On September 2003, Perkins executed the Cooperation Agreement with the Government.  The exact date of the agreement is unclear.  The first page of the Cooperation Agreement is dated September 22, 2003, but Perkins' signature is dated September 3, 2003, and his attorney J. Randall Cox's signature is dated September 30, 2003.  The Cooperation Agreement stated, in part:

> 1.    The government agrees that no statement made or information provided pursuant to this agreement may be directly introduced as evidence against your client in any criminal case, including sentencing, excepting (1) a prosecution for making a false statement or perjury, and (2) use as impeachment or rebuttal evidence should your client subsequently testify or take a factual position contrary to the information he provides.  The government will be free to make indirect, or derivative, use of his statements.  This agreement means only that the fact your client made certain incriminating statements pursuant to

3

this agreement may not itself be introduced as evidence against him. . . .

2.    In addition, the government agrees that no statement made or information provided pursuant to this agreement may be used indirectly as material evidence on the issue of drug amounts in sentencing your client, subject to the same exceptions of (1) a prosecution for making a false statement or perjury, or (2) use as impeachment or rebuttal evidence should your client subsequently testify or take a factual position contrary to the information he provides.  The government will remain free to use drug amount evidence obtained independently of your client's cooperation, and evidence already obtained before this agreement is signed, including but not limited to, reports of previous witness interviews and the complete supporting testimony of those witnesses, without limitation.

Cooperation Agreement, ¶¶ 1-2.

On May 4, 2004, Perkins pleaded guilty to the charge in Count 1 of the Indictment in a hearing before United States Magistrate Judge Byron G. Cudmore.  Judge Cudmore entered a Report and Recommendation that the Court accept the Plea.  Case No. 03-30059, Minute Entry entered on May 4, 2004.  The Court accepted the plea on May 10, 2004.  Order entered May 10, 2004 (Case No. 03-30059, d/e 31).

Perkins entered his guilty plea pursuant to a Plea Agreement.  Perkins executed the Plea Agreement on May 4, 2004.  Plea Agreement, at 17.  The

4

Plea Agreement contained a waiver of Perkins' right to file a petition under § 2255, or otherwise collaterally attack his conviction and sentence.  The relevant portion of the Plea Agreement stated,

> The defendant also understands that he has a right to attack the conviction and/or sentence imposed collaterally on the grounds that it was imposed in violation of the Constitution or laws of the United States; that he received ineffective assistance from his attorney; that the Court was without proper jurisdiction; or that the conviction and/or sentence was otherwise subject to collateral attack.  The defendant understands such an attack is usually brought through a motion pursuant to Title 28, United States Code, Section 2255.  The defendant and his attorney have reviewed Section 2255, and the defendant understands his rights under the statute. Understanding those rights, and have thoroughly discussed those rights with his attorney, the defendant knowingly and voluntarily waives his right to collaterally attack the conviction and/or sentence. . . .

Plea Agreement, at 6.

On January 31, 2005, the Probation Office issued a Second Revised Presentence Investigation Report (PSR) on Perkins.   Presentence Investigation Report  (Case No. 03-30059, d/e 54). The original report was prepared on August 4, 2004; the first revision was prepared on December 21, 2004.  PSR, at 1.  In the Second Revised PSR, the Probation Office found that Perkins was accountable for 2.2 kilograms of a mixture or substance containing methamphetamine.  PSR, ¶ 101.   The Probation

Office based this calculation on: (1) a search of Maynor's home on March 20, 2003, during which 54.7 grams of methamphetamine were found in Maynor's trunk; (2) a controlled buy of .3 grams of methamphetamine from Perkins on April 10, 2003; (3) interviews before Perkins signed the Cooperation Agreement on September 3, 2003, with (a) three confidential sources, and (b) other individuals named Jeannette Partain, Ronald Cox, Kelli Adams, Tonya Owen, Cheryl Eskew, Shannon Barnstead, Gregory Miller, Susan Cannady, Roy Gallagher, Robert McKim, Jr.,David Zehnle, and Joel Redman; (4) interviews after September 3, 2003, with (a) a confidential source, and (b) an individual named Tasha Baker; and (5) interviews with co-defendant Maynor that were conducted both before and after September 3, 2003.  To be conservative and to avoid the risk of double counting, the Probation Office recommended that Perkins should be held accountable for 500 grams to 1.5 kilograms of a mixture or substance containing methamphetamine.  PSR, ¶ 102.  The base offense level for this amount of drugs was 32.  PSR, ¶ 107; U.S.S.G. § 2D1.1(c)(4).

The Probation Office also recommended that Perkins' offense level be increased by two levels because Perkins possessed a weapon in connection with the offense.  PSR, ¶ 109; U.S.S.G. § 2D1.1(b)(1).  On April 4, 2003,

law enforcement officials stopped Perkins in his vehicle because the vehicle had no registration plates.  During the search, officers found an explosive device in the vehicle and a pill that contained .1 gram of methamphetamine. PSR, ¶ 24.  Roy Gallagher told law enforcement officials that Perkins owned a .38 revolver.  PSR, ¶ 57.  Maynor also told officers that he observed Perkins carry a .22 pistol or .22 rifle.  PSR, ¶ 68.

The Probation Office also recommended that Perkins' offense level be increased by three levels because Perkins was a manager or supervisor of the conspiracy.  PSR, ¶ 111; U.S.S.G. § 3B1.1(b).  Maynor again told law enforcement officials that Perkins was in charge of the conspiracy and called all the shots.  PSR, ¶ 68.

The resulting offense level was 37.  The Probation Office then recommended a three level reduction because Perkins accepted responsibility for his offense, resulting in a final offense level of 34.  PSR, ¶¶ 114-17.  Perkins was in criminal history category II, resulting in an advisory sentencing range of 168 to 210 months in Zone D of the Guidelines range.  PSR, ¶166.  The statutory maximum for Perkins was twenty years.  21 U.S.C. § 841(b)(1)(C); PSR, ¶ 165.

On August 18, 2004, attorney Cox sent the Probation Office a letter

setting forth his objections to the original report.  Perkins objected to the drug quantity and the enhancements for possession of a weapon and the leadership role because those facts had not been admitted by Perkins or proven to a jury beyond a reasonable doubt.  <u>Amended Motion</u>, Exhibit 4, <u>Letter dated August 18, 2004 (August 18 Letter)</u>.  At the time that the August 18 Letter was written, the Seventh Circuit had decided that such matters had to be admitted or proven to a jury beyond a reasonable doubt.  <u>United States v. Booker</u>, 375 F.3d 508 (7th Cir. 2004), <u>rev'd</u>, 543 U.S. 220 (2005).  The August 18 Letter took the position that, because these matters had not been proven beyond a reasonable doubt, the correct offense level was 12, which was the lowest offense level for being held accountable for any amount of methamphetamine.  U.S.S.G. § 2D1.1(c)(14).  The August 18 Letter asserted that, after the two point reduction for acceptance of responsibility, the correct offense level would be 10.  The sentencing range for offense level 10 and criminal history category II was 8 to 14 months in Zone C of the Guideline range.  U.S.S.G., Chapter 5, Part A, <u>Sentencing Table</u>.

On January 12, 2005, the Supreme Court reversed the Seventh Circuit's decision in <u>Booker</u>.  <u>United States v. Booker</u>, 543 U.S. 220 (2005).

The Supreme Court declared unconstitutional those portions of the Guidelines that made the sentencing range calculation under the Guidelines mandatory.  Id., at 259-61.  Thus, the Guidelines were now advisory, and therefore, the factors used in calculating the sentencing range under the Guidelines did not increase the maximum sentence that a defendant faced. As a result, the factors used to calculate the Guideline sentencing range did not need to be charged in an indictment or proven to a jury beyond a reasonable doubt.  Id., at 264-65; see Apprendi v. New Jersey, 530 U.S. 466 (2000).  The Court, therefore, could continue to calculate the, now advisory, Guideline range at the sentencing phase based on a preponderance of the evidence.  Booker, 543 U.S. at 264-65.

Perkins, however, persisted in raising the same objections to the Guideline calculation.  Perkins objected because the quantity of drugs, his possession of a weapon, and his leadership position were not charged in the Indictment or proven to a jury beyond a reasonable doubt.  Perkins argued that a sentence, "cannot be based on any evidence, other than the fact of a prior conviction, to which he has not admitted, or for which he has not been found guilty by a jury beyond a reasonable doubt."  Defendant Dana R. Perkins' Commentary on Sentencing Factors (Case No. 03-30059, d/e 44),

at 2.

The Government, through Assistant United States Attorney David Risley, responded to Perkins' objections by arguing that additional enhancements or adjustments were appropriate in calculating Perkins' offense level under the Guidelines.   Government's Commentary on Sentencing Factors (Case No. 03-30059, d/e 50) (Government Commentary).   The Government argued that Perkins did not accept responsibility for his offense if he persisted in his objections.  Id., at 2.  In addition, the Government argued that Perkins' offense level should be increased by three levels for creating a substantial risk of harm to both human life and the environment.  Id., at 3; U.S.S.G. § 2D1.1(b)(6)(B).  In one instance during the manufacture of methamphetamine, a fire started and burned a confidential source and an individual named John Dyer.  PSR, ¶ 62.  In another instance, a fire extinguisher filled with anhydrous ammonia blew up. PSR, ¶ 75.

The Government also argued that Perkins' offense level should be increased by six levels because he endangered a life of a minor.  Government Commentary, at 4-5.  On several occasions, Perkins manufactured methamphetamine at Maynor's residence, and Maynor had minor children

10

living in the residence.  PSR, ¶¶ 36, 72, 74.  In one other incident, Perkins

manufactured methamphetamine while a disabled child was present.  PSR,

¶ 96.

If the Court had adopted the Government's analysis, then Perkins'

offense level would have been increased from 37 to 46, and he would not

have received any reduction for acceptance of responsibility.  The resulting

sentencing range, based on the Guideline's Sentencing Table, would have

been life.  U.S.S.G. Chapter 5, Part A.  The statutory maximum, however,

was twenty years, or 240 months, so the Guideline sentencing range would

have been 240 months.  U.S.S.G. § 5G1.1(a).

On March 3, 2005, attorney Cox sent a letter to Perkins alerting him

to the Government's position.  Amended Motion, Exhibit 1, Letter dated

March 5, 2005 (March 5 Letter).  Cox concluded the letter,

> Obviously, Mr. Risley is attempting to increase the stakes to
> cause you to reconsider your position.  It should also be obvious
> that the addition of the nine points, should the Court choose to
> apply them, would most likely put you in a category of 360
> months to life.  Of course, this exceeds the statutory maximum
> of 20 years.

March 5 Letter, at 1-2.[1]

---

[1]The Clerk's Office erroneously did not electronically file the last page of the
March 5 Letter.  The last page of the March 5 Letter is attached to the original Amended

On March 8, 2007, the Government filed a Notice of Agreed Resolution of Sentencing Issues (Case No. 03-30059, d/e 53) (Notice). Under the agreement set forth in the Notice, the Government agreed to a reduction in the quantity of drugs for which Perkins would be held accountable. Perkins would be held accountable for 350 grams to 500 grams of a mixture or substance containing methamphetamine, rather than 500 grams to 1.5 kilograms, as recommended in the PSR. The Government further agreed to no firearm enhancement and no enhancement for creating a risk of harm to human life and the environment. Finally, the Government agreed that Perkins should receive a three-point reduction in his offense level for acceptance of responsibility. In exchange, Perkins agreed to the manager or supervisor enhancement and the enhancement for creating a risk of harm to a minor. Notice, at 2-3. As a result, the Notice stated that the parties agreed to a final offense level of 36.[2] With Perkins' criminal history, the resulting Guideline sentencing range was 210 to 262 months. The

Motion conventionally filed by Perkins.

[2]The base offense level was 30, based on accountability for 350 to 500 grams of a mixture or substance containing methamphetamine. The base offense level was increased to 39 due to the three-level increase for Perkins' role as a manager or supervisor and the six-level enhancement for Perkins' actions in endangering the lives of minors. The agreed final offense level was reduced to 36 after the three-level reduction for acceptance of responsibility. Notice, at 2-3.

statutory maximum was 240 months, so the final Guideline range would be 210 to 240 months.

Risley presented the Notice to the Court at the sentencing hearing on March 8, 2005.  Perkins was present in person and with his attorney Cox. United States' Motion to Supplement the Record with Transcripts and Supplemental Arguments (d/e 10) (Government Supplement), Exhibit A, Transcript of Proceedings on March 8, 2005 (Case No. 03-30059, d/e 81) (March 8 Transcript).[3]  Risley and Cox both stated that the Notice reflected a settlement of the parties' positions on the Guideline sentencing  range. Id., at 10-11.  Changes were made by interlineation to the PSR to reflect the agreement.  PSR, ¶¶ 109-177, 166.

The Court then had the following colloquy with Perkins regarding the proposed settlement:

> THE COURT:  Very good, thank you very much, Mr. Cox.
>
> Now, Mr. Perkins, you've heard all of the commentary that has been made by Mr. Risley, is that correct?
>
> MR. PERKINS:  Yes, sir.

---

[3]The first page of the March 8 Transcript contains a typographical error which erroneously states that the date of the proceeding was March 8, 2006, rather than March 8, 2005.

> THE COURT:  And also the agreement by Mr. Cox on your behalf for the defense?
>
> MR. PERKINS:  Yes, sir.
>
> THE COURT:  And is this your understanding?
>
> MR. PERKINS:  Yes, sir.
>
> THE COURT:  And do you agree that this is the final agreement between both the government and you as the defendant in this cause, that the final figures as I gave them here are the correct final findings of the Court regarding the sentencing guidelines which are of course only advisory now?
>
> MR. PERKINS:  Yes, sir, I do.
>
> THE COURT: All right.  And do you also agree with Mr. Cox and Mr. Risley that the final figures are as stated in paragraph 166 now which would be that the offense level is 36, the criminal history category is Roman II, the guideline imprisonment range is 210 to 262 months, but that the 262 drops to 240 because of the 20 year statutory maximum?
>
> MR. PERKINS: Yes, sir, I do.

March 8 Transcript, at 12-13.  The Court then accepted the findings of the PSR, subject to the modifications set forth in the Notice.  The Court sentenced Perkins to 210 months.  His sentence was subsequently reduced to 158 months due to his substantial assistance to the Government in the prosecution of other crimes.  Fed. R. Crim. P. 35; Amended Judgment in a Criminal Case entered July 20, 2006 (Case No. 03-30059, d/e 82).

14

<u>ANALYSIS</u>

Perkins raises seven issues in his Petition:

I.     Was Counsel Effective in Said Defense Of The PSR And Under the Enhancements?

II.    Did The Government Breach The Immunity And The Specific Terms of This Grant of Use Immunity, Specifically No. 2 In the Cooperation–Agreement?

III.   Does The Sentence Violate The Statutory Maximum Under the <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 475-76 (2000) or Any Fact That Increases The Penalty For A Crime Beyond The Maximum, Is, In Effect, An Element Of The Crime And Must Be Submitted To The Jury.

IV.    Was The Sentence Reasonable Under <u>United States v. Booker</u>, 543 U.S. 621. Under The Discretion?

V.     Is The Sentence Legal Under <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), In The Offense Did The Defendant, Dana R. Perkins, Admit The Facts Under The Enhancements?

VI.    Was Counsel Effective Throughout The Case Did His Representation Meet The Criteria Under The Sixth Amendment?  Or Was A <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), Violation Enacted In Poor Representation That Constituted A Sixth Amendment Violation Unto The Defendant?

VII.   Was A 5th Amendment Violation Permitted By The Court, Where No Person Shall Be Held To Answer For An InFamous Crime Unless On Presentment Or Indictment Of A Grand Jury?

Amended Motion, at 9-10.

The Government argues that the Court should dismiss the Petition because Perkins waived his right to bring a collateral attack in his Plea Agreement. Waivers of rights to collaterally attack a sentence under § 2255 are binding and enforceable if the terms are clear and unambiguous and the waiver was entered into knowingly and voluntarily. United States v. Sines, 303 F.3d 793, 798 (7th Cir. 2001); United States v. Jemison, 237 F.3d 911, 917 (7th Cir. 2001). The waiver may also be challenged if counsel provided ineffective assistance in negotiating the Plea Agreement. Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999). The Court has reviewed the Plea Agreement and the transcript of the plea hearing and is convinced that the waivers were knowing and voluntary. Government Supplement, Exhibit A, Transcript of Proceedings on May 4, 2004 (Case No. 03-30059, d/e 83). Perkins, further makes no claim that Cox was ineffective in negotiating the Plea Agreement. Perkins, thus, waived his right to bring this action. The Petition, therefore, is dismissed.

The Court notes that even if Perkins had not waived his right to bring a collateral attack, the Court would have dismissed the Petition on the merits. Perkins had the burden to submit detailed and specific evidence

which shows that he has actual proof of the allegations, rather than mere unsupported assertions, before he would have been entitled to an evidentiary hearing.  Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002).  The Petition fails to meet this standard.

Points III, IV, V, and VII quoted above, are meritless.  Based on the Indictment, Perkins was facing a statutory maximum sentence of twenty years. 21 U.S.C. § 841(b)(1)(C).  Because the Guidelines are advisory, none of the factors used to calculate the advisory Guideline sentencing range changed the statutory maximum sentence.  Because the sentencing factors taken from the Guidelines did not affect the statutory maximum sentence, they did not need to be charged in the Indictment or proven to a jury beyond a reasonable doubt.  Booker, 543 U.S. at 259-61.  The Guideline sentencing factors may be determined by the Court at sentencing.  That is what happened here.  Furthermore, the sentence was at the low end of the advisory Guideline sentencing range and was below the statutory maximum of twenty years.  The Court sees no basis to find that the sentence was not reasonable.

Perkins claims in Point II of the Petition that the Government breached the Cooperation Agreement by using Perkins' immunized

17

statements against him.  There is simply no evidence of this.  The Probation Office did not rely on any statement by Perkins in calculating any part of the Guideline sentencing range.  Perkins presents no evidence that immunized testimony was used.

Perkins focuses on the alleged use of immunized testimony to support the calculation of the drug quantity.  The Cooperation Agreement stated that Perkins' immunized statements could not be used directly or indirectly to support a calculation of drug quantities.  One could argue that statements given by others after the execution of the Cooperation Agreement in September 2003, could have been based, in part, on information that Perkins provided pursuant to the Cooperation Agreement, and as such, could have constituted an indirect use of his immunized statements.  If so, those statements could not have been used to calculate drug quantities.

Perkins presents no evidence to support such an argument.  But even if he could, he still has no evidence that the Government breached the Cooperation Agreement.  The Government agreed to lower the quantity of drugs for which he was held accountable to at least 350 grams but less than 500 grams of a mixture or substance containing methamphetamine.  The information provided to law enforcement before September 2003 indicates

18

that Perkins was accountable for at least 432.09 grams.  <u>PSR</u>, ¶¶ 19-64.[4]

Perkins claims that the information from these witnesses was unreliable, but

he has no evidence of this.  Thus, the Government agreed to a drug quantity

that was supported by evidence that could not have come directly or

indirectly from Perkins' immunized statements.  Perkins fails to show any

breach of the Cooperation Agreement by the Government.[5]

Perkins argues in Points I and VI of the Petition that his counsel was

ineffective.  If Perkins had not waived his right to bring the Petition, he

would have needed to show two elements to prevail on his ineffective

assistance claims: (1) the counsel's performance fell below an objective

standard of reasonableness; and (2 ) the counsel's deficient performance

prejudiced him resulting in an unreliable or fundamentally unfair outcome

of the proceeding.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).

Perkins presents no evidence to show that his counsel was ineffective.

---

[4]This calculation does not include the information secured from co-defendant Maynor because law enforcement officials interviewed Maynor both before and after September 2003, and the PSR did not specify the information that Maynor provided before that date.

[5]Other enhancements and adjustments at sentencing could be based on evidence received indirectly from Perkins.  <u>Cooperation Agreement</u>, ¶1, quoted above.  Thus, statements by other individuals after September 2003 could be used to establish these issues even if the information came indirectly from Perkins as long as Perkins' statements were not used directly.  <u>Id.</u>

Perkins essentially complains that his counsel did not press his meritless argument that factors under the Guidelines had to be included in the charge in the indictment and proven to a jury beyond a reasonable doubt. As explained, these arguments are meritless, so Perkins' counsel was not ineffective by not pressing them. Perkins complains about the agreement his counsel made to resolve the parties' positions concerning the PSR. As quoted above, Perkins agreed to the terms of this agreement in open court. Furthermore, the evidence in the PSR supported the Government's position on all of the enhancements and adjustments. Thus, under all of the facts and circumstances, the advisory Guideline offense level should have been 46 and the sentencing range should have been the statutory maximum of 240 months. Perkins' counsel effectively negotiated a reduction in the Guideline range to 210 months to 240 months. He was not ineffective.

Perkins claims that he was forced into accepting the agreement in the Notice because his counsel told him he would receive a sentence of thirty years to life if he did not. E.g., Amended Motion, at 7. No evidence supports this claim. The March 5 letter states that the Guideline range would be 360 months to life, but the statutory maximum was twenty years. Attorney Cox, thus, told Perkins in writing that the maximum sentence was

twenty years, not thirty years to life.  Judge Cudmore also told Perkins the maximum sentence was twenty years.  <u>Government Supplement</u>, Exhibit B, <u>Transcript of Proceedings on May 4, 2004</u>, at 18.  The Notice stated that the maximum sentence was twenty years.  <u>Notice</u>, at 1.  Risley and Cox both agreed at the sentencing hearing that the maximum sentence was twenty years.  <u>March 8 Transcript</u>, at 6, 12.  Finally, as quoted above, the Court stated to Perkins that the maximum sentence was twenty years.  <u>Id.</u>, at 13.  Perkins clearly knew that the maximum sentence was twenty years, not thirty.  His attorney did not misinform him, and any misinformation or misunderstanding was cleared up by the Court at the sentencing hearing.  Perkins' counsel was not ineffective.

THEREFORE, Perkins' Notice of Out of Time Appeal (d/e 1) [in which Petitioner incorporated a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255], his Supplement to Petition for 28 U.S.C. § 2255 (d/e 7), and his Amended Motion 28 U.S.C. § 2255 and Memorandum in Support  (d/e 20) are DENIED.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: _____April 10_____, 2007.

21

FOR THE COURT:

_____s/Jeanne E. Scott_____
JEANNE E. SCOTT
UNITED STATE DISTRICT JUDGE